UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALIX L. JOSEPH,

                        Plaintiff,

          -against-

BETH ISRAEL MEDICAL CENTER,

                        Defendant.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-02961 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

        Pro se Plaintiff Alix L. Joseph brings this action against Defendant Beth Israel Medical Center ("BIMC") seeking reinstatement to his former position of employment, back pay and lost wages, and compensation for pain and suffering pursuant to BIMC's alleged violation of Title VII of the Civil Rights Act of 1964 and N.Y. Exec. Law Art. 15. (Def. Notice of Mot. to Dismiss, Ex. A ("Compl.") (Dkt. 7) ¶¶ 12, 14.) Plaintiff's claims arise from BIMC's termination of his employment. (Id. ¶ 9.) BMIC has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (Def. Notice of Mot. to Dismiss at 1.) For the reasons explained below, BMIC's Motion to Dismiss the Complaint is GRANTED.

I.    **BACKGROUND**

        The court assumes the truth of the following allegations from Plaintiff's Complaint and Brief Opposing the Defendant's Motion to Dismiss the Complaint for the purposes of this analysis. See Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).

    A.    **Factual Background**

        1.    <u>Plaintiff's Training and Employment</u>

        Plaintiff, a black man, was employed as an unregistered respiratory therapist by BIMC between May 1, 1997, and June 5, 2006. (Compl. ¶ 3; Pl. Br. Opp'n to Def. Mot. to Dismiss

1

("Pl. Br.") (Dkt. 6) ¶ 1; Def. Notice of Mot. To Dismiss, Ex. D ("Summons") at 1.) In 1995, Plaintiff graduated from New York University Medical Center as a respiratory therapist and was certified as a respiratory technician by the National Board for Respiratory Care ("NBRC"). (Compl. ¶ 1.) Plaintiff is licensed as a respiratory technician by the University of the State of New York to practice respiratory therapy in the State of New York. (Id.)

    2.    The Agreement

In January 2001, BMIC entered into an agreement (the "Agreement") with the 1199 Union (the "Union")—which represented certain BMIC employees, including respiratory therapists like Plaintiff—that the job qualifications for respiratory therapists would be changed to require becoming a *registered* respiratory therapist, including meeting the standards necessary to achieve such registration. (Pl. Br. ¶ 1.) As part of the Agreement, respiratory therapists currently on staff were allowed a grace period of several years so they could study for and take the biannual registration exam, the fee for which would be paid by BMIC. (Id.)

In March 2006, BIMC notified Plaintiff that as an unregistered respiratory therapist he no longer met the qualifications of the position and had thirty days to apply for a position for which he was qualified or for which training could be provided. (Def. Notice of Mot. to Dismiss, Ex. B at 1.) Approximately one week later, Plaintiff met with Clarence Brotherson ("Brotherson"), an organizer with the Union, to discuss the terms of the Agreement. (Compl. ¶ 5.) Plaintiff asked why he was not previously informed by either BMIC or the Union about the terms of the Agreement and asked Brotherson to provide him with a copy of the Agreement. (Id.) Plaintiff informed Brotherson that he would not accept a transfer to a different position. (Id.) Plaintiff alleges Brotherson informed him that the Union would no longer be able to "protect" or represent the Plaintiff regarding the requirement of registration. (Id.)

### 3. The Alleged Discrimination

On April 28, 2006, Vadim Leyko ("Leyko"), Director of the Respiratory Therapy Department, informed Plaintiff that Emma Koralek ("Koralek"), Vice-President of the Nursing Department, had ordered Leyko to remove Plaintiff from the work schedule and to terminate Plaintiff's employment. (Id. ¶ 6.) Leyko then terminated Plaintiff's employment. (Id.) Three days later, however, Leyko contacted Plaintiff at his home telephone number, informing him that "the registry is no longer a problem, everything is fixed," and that Plaintiff should report to work the following Friday. (Id.) Plaintiff reported to work that Friday. (Id.)

On May 22, 2006, Leyko referred Plaintiff to Marisa Ognibene ("Ognibene"), Director of Human Resources. (Id. ¶ 7.) During Plaintiff's meeting with Ognibene, which was also attended by Al Defeo ("Defeo"), a Union representative, Ognibene stated that she needed to know when Plaintiff would be taking the registry exam. (Id.) Plaintiff informed her that he applied and was waiting for the NBRC to provide a testing date. (Id.) Ognibene informed Plaintiff that she was required to transfer Plaintiff to a position as a patient care assistant, the only available position at the time. (Id.) Plaintiff informed Ognibene that he would not accept a transfer from a "professional position" to an "ancillary position." (Id.) Plaintiff further informed Ognibene that BIMC had no authority to transfer Plaintiff from his position as a respiratory therapist because there was neither an ordinance nor memorandum from the New York State Health Department that would disqualify Plaintiff from practicing respiratory therapy. (Id.)

Plaintiff asserts that at this point Defeo whispered something inaudible to Ognibene, who replied that "Koralek and . . . Leyko cannot send this guy [Plaintiff] to me like that to be fired . . . [and that] they know very well that they have to give me a lot of signed documents before I could do that. I am not taking on myself the responsibility to fire this guy." (Id.) Defeo, after

again whispering something in Ognibene's ear, then left the room. (Id.) Ognibene then instructed Joseph to "go back to your work, if there is something new, I will let you know." (Id.)

On June 2, 2006, Defeo informed Plaintiff that Koralek would finalize a decision regarding Plaintiff's employment in three days. (Id. ¶ 9.) On June 5, 2006, Plaintiff, who was on his day off, called the Respiratory Department as instructed by Defeo and was informed by Leyko that Koralek had closed Plaintiff's case and terminated his employment. (Id.) Plaintiff claims he never received a letter of termination from the Human Resources Department because Koralek and Leyko terminated his employment without proper cause. (Id.)

During this period from April 28, 2006, and June 5, 2006, Maureen Buckley ("Buckley"), also an unregistered respiratory therapist at BIMC, was not removed from her work schedule and was able to retain her position as a respiratory therapist. (Id. ¶ 6.) Buckley is white. (Id.)

### 4. Plaintiff's Attempts to Obtain the Agreement

Beginning on May 22, 2006, Plaintiff requested that BMIC and the Union provide him with a copy of the Agreement between BMIC and the Union that required respiratory therapists to upgrade their NBRC certification or to transfer to an available job that did not require a higher level of NBRC certification. (Id. ¶ 10; Pl. Br. ¶ 5.) Plaintiff asserts that both BMIC and the Union ignored his demand. (Compl. ¶ 10.) Plaintiff subsequently went to the Union's office but was denied entrance because he did not have an appointment. (Id.) Additionally, Plaintiff wrote several letters to the Union—including a certified letter with a reception receipt—all of which went unanswered. (Id.) As a result, Plaintiff filed a complaint against the Union with the National Labor Relations Board ("NLRB"), a copy of which was also sent to BMIC. (Id.) In June 2011, Plaintiff obtained from the NLRB three different copies of a collective bargaining agreement between BMIC and the Union, none of which mention the Agreement. (Pl. Br. ¶ 7.)

B.   **Procedural History**

On March 28, 2012, more than five years after his termination date, Plaintiff filed a race discrimination charge with the New York State Division of Human Rights ("SDHR"), which accepted the charge on behalf of the federal Equal Employment Opportunity Commission ("EEOC"). (Def. Notice of Mot. To Dismiss, Ex. F at 1.) The SDHR dismissed Plaintiff's charge as untimely on September 21, 2012. (Dismissal of SDHR Action - Attached to Complaint ("SDHR Action") at 1.)

On November 20, 2012, more than six years after his discharge, Plaintiff commenced a civil action in New York State Supreme Court, Kings County, by serving BIMC with a summons with notice. (Summons at 1.) In response to BIMC's demand for a complaint, Plaintiff served his Complaint, which BIMC received on April 29, 2013, and in which Plaintiff asserted causes of action for race discrimination under Title VII of the Civil Rights Act of 1964 and N.Y. Exec. Law Art. 15. (Compl. ¶ 12.) On the basis of the federal Title VII claim asserted in the Complaint, BIMC filed a Notice of Removal on May 20, 2013, removing Plaintiff's action to this Court. (Def. Notice of Mot. To Dismiss, Ex. E at 1-2.)

II.   **STANDARD OF REVIEW**

Dismissal for lack of subject matter jurisdiction is proper under Federal Rule of Civil Procedure 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate" a case. Sokolowsky v. Metro. Transp. Auth., 723 F.3d 187, 190 (2d Cir. 2013) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000), citing Fed. R. Civ. P. 12(b)(1)). A plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. See Hamm v. United States, 483 F.3d 135 (2d Cir. 2007) (quoting Luckett v. Bure, 290 F.3d 493, 496 (2d Cir. 2002)). In deciding a motion under Rule 12(b)(1), the court

5

must construe all ambiguities and draw all inferences in favor of the plaintiff. See Aurecchione v. Schoolman Transp. System, Inc., 426 F.3d 635 (2d Cir. 2005) (citing Makarova, 201 F.3d at 113; Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Similarly, in reviewing a defendant's motion to dismiss for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all allegations of fact made by the plaintiff and draws all reasonable inferences from these allegations in the plaintiff's favor. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). To survive the motion, a claim must be more than a mere recitation of the elements of a cause of action or series of legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009). The complaint instead must provide enough factual content that, when taken as true, would allow a court to draw a "reasonable inference" that the plaintiff is entitled to relief. Id. at 678. This means that a claim for relief must be plausible; it must raise more than "the mere possibility of misconduct" by a defendant. Id. at 678-79.

Pro se submissions are held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). A pro se complaint and other documents are "to be liberally construed," Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." Boddie v. N.Y. State Div. of Parole, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting Traguth v. Zuch, 710 F.2d 90, 95 (2d Cir. 1983)). "Thus, the duty to liberally construe a defendant's complaint is not the equivalent of a duty to re-write it." Geldzahler v. N.Y. Med. Coll., 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotations and alterations omitted).

## III. DISCUSSION

Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and N.Y. Exec. Law Art. 15 ("NYSHRL"), arguing that Plaintiff's claim for race discrimination is time barred. (See Def. Notice of Mot. to Dismiss at 1-2; Compl. ¶ 12.) For the reasons that follow, the court finds that Plaintiff's claims are time barred, and therefore his Complaint is dismissed in its entirety.

### A. Title VII Claim

Plaintiff, a black respiratory therapist whose employment was terminated on June 5, 2006, for failing to become registered with the NBRC, claims that Buckley, a white respiratory therapist who allegedly failed to become registered, was not terminated. (Compl. ¶ 6.) On the basis of this alleged differentiation, Plaintiff asserts that "[i]t is evident that Beth Israel Medical Center treated differently white worker[s] and black worker[s] which is incompatible" with Title VII. (Compl. ¶¶ 6, 12.)

BMIC argues that Plaintiff's Title VII claim is barred because he failed to file his agency charge within 300 days of the last act of discrimination about which he complains. (Def. Mot. to Dismiss (Dkt. 9) at 2.) Plaintiff counters that because BMIC and the Union refused to provide him with a copy of the Agreement, he is entitled to equitable tolling and an extension of the time limits. (Pl. Br. ¶ 8.)

Before bringing suit under Title VII, as a condition precedent to commencing an action in court a plaintiff must first file an administrative charge with the EEOC within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-5(e)(1). Claims not included in such a charge are time barred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). "Timeliness

is measured from the date that the employee receives notice of the discriminatory decision." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996); see also Collier v. Boymelgreen Developers, No. 06-CV-5425 (SJ), 2008 WL 835706, at *3 (E.D.N.Y. Mar. 28, 2008). "The 300-day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination, not upon his discharge." Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 23 (2d Cir. 1985); Bordianu v. Educ. Broad. Corp., No. 07-CV-1762 (NG), 2008 WL 1882106, at *3 (E.D.N.Y. Apr. 24, 2008). When the plaintiff fails to file a timely charge with the EEOC, a subsequent civil action is generally time barred as well. See Hansen, 147 F. Supp. 2d 142, 155 (E.D.N.Y. 2001).

However, the Second Circuit has recognized that the time limits established by Title VII are "subject to waiver, estoppel, and equitable tolling." Downey v. Runyon, 160 F.3d 139, 145 (2d Cir. 1998) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). Equitable tolling may, in exceptional circumstances, excuse a failure to follow the filing requirements of Title VII. See Miller, 755 F.2d at 24; Upadhyay v. Sethi, No. 10-CV-8462 (NRB), 2012 WL 3100601, at *1 (S.D.N.Y. July 31, 2012).

The application of equitable tolling to the 300-day filing period requires Plaintiff to show that exceptional circumstances prevented him from timely filing an EEOC charge. See Miller, 755 F.2d at 24; Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000). A limitations period will "not be tolled or delayed pending the employee's realization that the conduct was discriminatory," Miller, 755 F.2d at 24, or because the employee "discovered the allegedly discriminatory motive for the employer's act years later, based upon the employer's treatment of other employees," Jones v. Long Island R.R. Co., No. 96-CV-0433 (FB), 1998 WL 221365, at *3 (E.D.N.Y. May 1, 1998). Likewise, an employee's "ignorance of the law is not sufficient to

justify equitable tolling." Antonmarchi v. Consol. Edison Co. of N.Y., Inc., 514 F. App'x 33, 37 (2d Cir. 2013). If tolling is invoked on the grounds of employer misconduct, the employee must show he "was actively misled by his employer" in a way that "made it impossible for a reasonably prudent person to learn that his discharge was discriminatory." Miller, 755 F.2d at 24. For example, where an employee "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," equitable tolling principles would apply. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990); see Arena v. Plandome Taxi, Inc., No. 12-CV-1078, 2012 WL 4849318, at *1 (E.D.N.Y. April 23, 2013). Crucially, however, such principles do not apply where an employee waited beyond the filing deadline for a response to his request for information or assistance relating to his filing of a discrimination claim. See Finch v. NYC Transit Auth., No. 09-CV-5371 (NGG), 2011 WL 2708308, at *1-3 (E.D.N.Y. July 8, 2011) (holding that employee was not entitled to equitable tolling where his failure to timely file EEOC charge was due to discontinued internet service, which resulted in receiving EEOC email four years after it was originally sent).

Here, Plaintiff alleges that the last act of discrimination against him took place no later than June 5, 2006, the date of his notice of termination and discharge. (Def. Notice of Mot. To Dismiss, Ex. F at 1.) Consequently, the statute required Plaintiff to file a charge of discrimination with the EEOC on or before March 31, 2007—that is, 300 days after June 5, 2006. See 42 U.S.C. § 2000e-5(e)(1); Morgan, 536 U.S. at 109. Plaintiff did not file a charge with the EEOC by that date; rather, Plaintiff filed his charge on March 28, 2012, nearly five years after the deadline. (SDHR Action at 1.) Therefore any discrimination claim under Title VII in the events leading up to and arising out of Plaintiff's termination is time barred, absent equitable tolling. See Odom v. Doar, 497 F. App'x 88, 89 (2d Cir. 2012) (dismissing complaint

9

for discriminatory action under Title VII because plaintiff's charge was not filed until three years after the 300-day statute of limitations had passed); Glaser v. Fulton-Montgomery Cmty. Coll., 50 F. App'x 17, 19 (2d Cir. 2002) (dismissing complaint for discriminatory action under Title VII because plaintiff's charge was not filed until approximately one year after the expiration of the 300-day statute of limitations).

Moreover, Plaintiff has not met the standard for equitable tolling. Plaintiff asserts two arguments that might be reasonably construed as relating to a request for equitable tolling[1]: (1) Plaintiff has never seen the Agreement between BIMC and the Union requiring respiratory therapists to upgrade their NBRC certification, despite repeatedly asking BIMC and the Union for any such agreement, both before and after his discharge (Pl. Br. ¶¶ 5, 8); and (2) the collective bargaining agreements between BIMC and the Union, a copy of which Plaintiff obtained from the government in June 2011 after BIMC and the Union allegedly failed to comply with Plaintiff's requests for it, do not require NBRC registration for respiratory therapists (id. ¶¶ 7, 8).

First, because Plaintiff did in fact file his Complaint with this Court without having seen the Agreement, he clearly was in no way prevented from filing a timely EEOC charge or civil

---

[1] Plaintiff sets forth several additional arguments in his brief criticizing the fairness of BMIC's decision to require the NBRC certification for respiratory therapists and the manner in which BMIC and the Union announced and implemented that decision. Specifically, Plaintiff argues that: (1) "a few months" notice of the "grace period" for unregistered respiratory therapists to obtain NBRC certification was insufficient (Pl. Br. ¶ 1); (2) NBRC registration was not required by BMIC when Plaintiff was originally hired or by any "memorandum" from the New York Health Department or college of physicians and surgeons (id. ¶ 2); (3) unregistered respiratory therapists are commonplace in New York hospitals, receive extensive medical training, and have not been shown to have harmed patients (id. ¶ 4); (4) the Agreement between BMIC and the Union to require respiratory therapists to be NBRC registered was "unfair and arbitrary" (id. ¶ 4); and (5) the court should be given copies of the registrations of other respiratory therapists who were hired or kept on staff since Plaintiff's discharge (id. ¶ 6.) However, those arguments are irrelevant to the issue of equitable tolling because they do not demonstrate that Plaintiff was in any way *prevented* from filing timely complaints with the EEOC and this court. Instead, those arguments go to the merits of Plaintiff's discrimination claim and would be relevant only if his Complaint had been timely filed or if a tolling exception applied.

suit without having a copy of the Agreement. Plaintiff argues that he asked BIMC for a copy of the Agreement in April 2006—two months before his discharge—and never received one. (Pl. Br. ¶ 5.) However, Plaintiff admits that when he was discharged in June 2006, he knew all of the same information that he now asserts, namely that: BIMC and the Union signed an agreement requiring respiratory therapists to upgrade their NBRC registration status; BMIC would transfer him to a different position if he did not register; and BMIC and the Union failed to respond to his request for a copy of the Agreement requiring him to become registered. (Id. ¶¶ 1, 4, 5-9.)

Accordingly, because Plaintiff was able to file his Complaint claiming discrimination based on his knowledge of those facts, there was nothing preventing him from filing a complaint claiming Title VII discrimination based on those same facts prior to the expiration of the statute of limitations in 2007. See Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 81 (2d Cir. 2003) (because "plaintiff failed to act diligently when she did not pursue the filing of a formal complaint with the EEOC . . . equitable tolling is not warranted"). Furthermore, because the Agreement was in no way integral to Plaintiff's ability to file a complaint, any failure by BMIC to locate and provide a copy of the Agreement does not constitute the "exceptional circumstance" required to justify tolling the 300-day limitations period under Title VII. See id. at 80 ("[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights.").

Second, Plaintiff's allegations regarding BMIC's failure to provide him the Agreement requiring respiratory therapists to become registered are not sufficient to show that BMIC actively engaged in "misleading conduct" that caused Plaintiff to be unaware of his claim or to fail to exercise his right to file a complaint. See Singh v. Wells, 445 F. App'x 373, 377 (2d Cir. 2011) ("[T]he limitations period commences upon 'the discriminatory act and [is] not tolled or

11

delayed pending the employee's realization that the conduct was discriminatory unless [he] was *actively* misled by his employer . . . .'") (emphasis added) (quoting Miller, 755 F.2d at 24)). Plaintiff does not allege that BMIC promised to provide the Agreement at a later date and that he delayed filing a complaint in reliance on such a promise. Nor does Plaintiff allege that BMIC asked him not to file a complaint while it attempted to locate those documents. Thus, there is nothing about the Plaintiff's alleged request—and BMIC's alleged failure to respond to it—that misled Plaintiff about his potential for a discrimination claim or his right to file a complaint. See Irwin, 498 U.S. at 96. Simply put, Plaintiff's failure to timely file a complaint cannot be excused on the grounds that he was misled by BMIC on any fact or at any time. Id.

Finally, Plaintiff does not show, or even attempt to show, that he "acted with reasonable diligence" in pursuing his discrimination claim during the five-year period that he seeks to have this court toll the statute of limitations on his Title VII claim. See Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 168 (1984) ("[E]xercising reasonable diligence in the District Court in attempting to . . . file a formal complaint should toll the statute of limitations."); cf. Irwin, 498 U.S. at 96 ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). Plaintiff's opposition papers do not describe any post-discharge pursuit of his wrongful discharge claims, with the possible exception of the assertion that he obtained from the NLRB copies of three collective bargaining agreements between BMIC and the Union. (Pl. Br. ¶ 7.) Plaintiff does not, for example, allege that he communicated with the EEOC, the New York State Division of Human Rights, or the New York City Commission on Human Rights about filing a discrimination claim. This omission is especially telling in light of Plaintiff's ability to locate and communicate with the NLRB to obtain copies of collective bargaining agreements. Indeed, Plaintiff does not allege

that he had any communication with anyone during this period about pursuing a discrimination claim—not a government agency, not a private lawyer, not his Union, and not BMIC. Because Plaintiff offers no evidence that he acted with reasonable diligence to pursue his Title VII discrimination claim during the period for which he seeks tolling, his tolling request is denied.

### B. NYSHRL Claims

Plaintiff advances the same argument for his NYSHRL discrimination claim as he does for his Title VII claim. (See Part III.A.) BMIC similarly argues Plaintiff's NYSHRL claim of racial discrimination is time barred because Plaintiff failed to file his Complaint within the three-year statute of limitations. (Def. Mot. to Dismiss at 4.) Plaintiff counters that because BMIC and the Union refused to provide him with a copy of the Agreement, he is entitled to equitable tolling and an extension of the time limits. (Pl. Br. ¶ 8.)

The statute of limitations for claims brought in civil court under the NYSHRL is three years. See N.Y. C.P.L.R. § 214(2); Odom, 497 F. App'x at 89 ("[B]ecause [the plaintiff] did not file his federal complaint until [after the requisite time period], his claims brought under the [NYSHRL] . . . which ha[s] a three-year statute of limitations, [are] . . . time-barred."); Townsend v. Exch. Ins. Co., 196 F. Supp. 2d 300, 313 (W.D.N.Y. 2002) ("The statute of limitations under the [NYSHRL] is three years.") (citing Murphy v. Am. Home Products Corp., 58 N.Y.2d 293, 307 (1983)). "[A]n employment discrimination claim accrues on the date that an adverse employment determination is made and communicated to the plaintiff." Milani v. Int'l Bus. Machines Corp., Inc., 322 F. Supp. 2d 434, 451 (S.D.N.Y. 2004). Accordingly, a plaintiff must institute a civil action by service, delivery, or filing of a summons within three years of learning of the adverse employment determination upon which that claim is based. Id.

Plaintiff's Complaint establishes that the most recent act of discrimination upon which his NYSHRL claim is based occurred on June 5, 2006, making that date the critical one for determining the timeliness of Plaintiff's state law claim. (Def. Notice of Mot. To Dismiss, Ex. F at 1.) Therefore, based on the three-year statute of limitations, Plaintiff was required to bring a claim under the NYSHRL no later than June 4, 2009. See N.Y. C.P.L.R. § 214(2). Plaintiff, however, failed to do so and did not commence this action until November 20, 2012. (Summons at 1.) As a result, Plaintiff's claim for race discrimination under the NYSHRL was filed over three years after the statute of limitations had run and thus is outside the actionable range of time. See N.Y. C.P.L.R. § 214(2). And because Plaintiff does not point to any evidence of continued discrimination subsequent to the date of his discharge on June 5, 2006, his NYSHRL claim similarly is not entitled to equitable tolling. See Marks v. N.Y. Univ., 61 F. Supp. 2d 81, 93 (S.D.N.Y. 1999) ("The limitations period for claims under . . . the NYSHRL may be tolled if there is evidence of a continuing violation."). Consequently, Plaintiff's NYSHRL claim is time barred.

## IV. CONCLUSION

BMIC's motion to dismiss Plaintiff's Complaint is GRANTED, and Plaintiff's Complaint is DISMISSED in its entirety. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
January 16, 2014

NICHOLAS G. GARAUFIS
United States District Judge